Grace E. Parasmo (308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7119 West Sunset Blvd., No. 808
Los Angeles, California 90046
Telephone: (646) 509-3913

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Maria Gamino, on her own behalf, and behalf of all others similarly situated*

# IN THE UNITED STATES DISTRICT COURT FOR

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA GAMINO, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOLT ENERGY HOLDINGS, LLC, BOLT ENERGY, LLC, BOLT ENERGY MANAGEMENT, LLC, BOLT ENERGY SERVICES LLC, Delaware limited liability companies, and DOES 1 TO 100, inclusive,<br><br>Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELECOMMUNICATIONS PRIVACY ACT, 47 U.S.C. § 227(b)(1)(A)(iii) AND/OR (b)(1)(B)** |

## CLASS ACTION COMPLAINT

Plaintiff Maria Gamino ("Gamino" or "Plaintiff") brings this class action complaint against Defendants Bolt Energy Holdings, LLC, Bolt Energy, LLC, Bolt Energy Management, LLC, Bolt Energy Services LLC, and Does 1 to 100 (hereinafter jointly referred to as "Defendants") to stop Defendants' practice of making unsolicited pre-recorded telephone calls to consumers and to obtain redress for all persons injured by this conduct. Plaintiff, for her class action complaint,

alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## Nature of the Case

1. Plaintiff, individually and as a proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and California Public Utilities Code § 989.5 (the "CTA law") for unsolicited pre-recorded telemarketing calls made by or on behalf of Defendants which deceptively and misleadingly market Defendants' services.

2. Plaintiff, individually, and for class members, seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the Class.

## Parties

3. Plaintiff Maria Gamino is a resident of California. She is the subscriber of a residential telephone on which she received numerous unsolicited telephone calls from Defendants using a prerecorded voice, suggesting the caller was connected with PG&E.

4. Defendant Bolt Energy Services LLC is registered with the California Public Utilities Commission and Secretary of State as having an office in Glendale, California.

5. Defendants Bolt Energy, LLC, Bolt Energy Holdings, LLC, and Bolt Energy Management, LLC are also Delaware limited liability companies. Bolt Energy, LLC and Bolt Holdings, LLC are registered with the California Secretary of State. Ultimately, Bolt Energy Management, LLC controls and manages of each of the Bolt entities alleged above.

6. All of Bolt entities alleged above are part of a joint venture or partnership, collectively referred to as "Bolt" or "Bolt defendants." All of the Bolt

defendants are affiliated and have common owners, and maintain a common headquarters which, based on information and belief, moved from 75 Lake Road, Congers, New York to 1 Tower Center Boulevard, East Brunswick, New Jersey in or about 2020.

7. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiff.

8. Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

9. All Defendants, including Bolt and Does 1 through 100, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of Bolt, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

10. In California, the California Public Utilities Commission ("PUC")

regulates core transport agents (or "CTAs") which sell natural gas contracts (also referred to as core aggregation or core transportation service) to "core" gas customers, including residential and small commercial customers. Cal. Pub. Util. Code §§ 980- 989.5.

11. Bolt has obtained and maintains licenses to operate as a retail electricity and natural gas supplier in various states with deregulated (or partially deregulated) markets like California. Specifically, the PUC licensed Bolt Energy Services, LLC ("Services") to operate as a CTA in California, and sell core transportation services to California consumers. Services qualifies a "core transport agent." Cal. Pub. Util. Code § 980(b). Services acts as a middleman, purchasing gas from Pacific Gas and Electric Co. ("PG&E") and other gas utilities, and supplying that gas to the ultimate retail customers (via PG&E's own infrastructure).

12. On information and belief, Services is simply a corporate shell used to (1) hold and maintain Bolt's various state licenses; (2) collect customer payments; and (3) trade energy supplies, and has few (if any) employees, and little other property, operations, or business functions. Bolt Energy, LLC and Bolt Energy Holdings, LLC are responsible for financing Services' energy trades, but again are simply corporate shells with has few (if any) employees, and little other property, operations, or business functions.

13. On information and belief, Bolt Energy Management, LLC ("Management") employs, controls, and supplies the individual natural persons— the officers, employees, and agents—who actually operate and control Bolt's day-to-day business. Management supplies the personnel who physically execute contracts or regulatory certifications for the other Bolt defendants, operate the business of registering and enrolling customers in Bolt's natural gas contracts (including operating Bolt's telemarketing campaigns), forecast, purchase, schedule, and distribute Bolt customers' electricity, and settle payments with utilities which

ultimately supply natural gas to Bolt customers. Given Bolt's corporate and operational structure, the entire revenue of the Bolt joint venture from the state of California necessarily flowed through Services as a CTA, and any of Bolt's conduct directed towards California accrued to Services' benefit, and can be attributed to Services.

## Jurisdiction and Venue

14. For the reasons stated in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Court has federal subject matter jurisdiction under 47 U.S.C. § 227.

15. This Court has personal jurisdiction over the Defendants under California Code of Civil Procedure section 410.10 because many of the acts alleged herein were committed and injury was incurred in California, because they conduct operations and/or sales in California, are registered to do business in California, and the acts alleged herein originated in or were directed to this District.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## Class Allegations
## Cal. Pub. Util. Code §§ 980-989.5

17. In 2013, the California Legislature passed the CTA law to fill the regulatory loophole which CTAs occupied, and authorized the PUC to regulate the CTAs . Cal. Pub. Util. Code §§ 980-989.5 (Stats. 2013, Ch. 604, Sec. 4. (SB 656).)

> This bill . . . Establishes a requirement for competitive natural gas service providers who market to residential and small commercial customers to register with PUC and meet specified requirements [and] Provides gas customers may seek remedies through PUC or the judicial system to resolve complaints. . . . PG&E reports that there are 20 active CTAs within the PG&E territory, and it has received 1,200 customer complaints about CTA service between May 2012 and April 2013 [including] *claims of deceptive and misleading marketing activities.* However, the [utilities] do not have the authority to

> investigate complaints of service on behalf of the customers. Therefore, the [utilities] typically recommend to customers that they pursue legal action in court.

(Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 656 (2013-14 Reg. Sess.) 2, 4 (Sept. 12, 2013) (italics added).) The PUC's informal complaint process is the primary (but not exclusive) enforcement mechanism of the CTA law:

> The commission shall accept, compile, and attempt to informally resolve consumer complaints regarding core transport agents. If the commission reasonably suspects a pattern of customer abuses, the commission may, on its own motion, initiate investigations into the activities of a core transport agent offering gas service.

Cal. Pub. Util. Code § 983(a). (*See also* Cal. PUC Decision (D.) 18-02-002 at 60-69 (recognizing separate procedures for informal and formal complaints).)

18. The CTA law prohibits misleading or abusive sales practices by CTAs, and authorizes the PUC to take enforcement action with respect to CTAs involved:

> A core transport agent may have its registration suspended or revoked, immediately or prospectively, in whole or in part, for any of the following acts:
>
> (1) Making material misrepresentations in the course of soliciting customers, entering into service agreements with those customers, or administering those service agreements.
>
> (2) Dishonesty, fraud, or deceit with the intent to substantially benefit the core transport agent or its employees, agents, or representatives, or to disadvantage retail gas customers.

Cal. Pub. Util. Code § 983.5(b). The PUC has authority to take a number of other enforcement measures. Cal. Pub. Util. Code §§ 983.5(a), (c), 984.5(b).

**The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227**

19. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

20. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy . . .").

21. In particular, the TCPA also prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).

22. The TCPA also prohibits initiating any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call is initiated for emergency purposes. 47 U.S.C. § 227(b)(1)(B).

23. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).

24. Abusive and deceptive robocalls like those used by Bolt are a scourge on modern society, and represent an increasing threat to American's continued use of the telephone system, which relies on the custom that people generally answer telephone calls to their telephone number. The TCPA's legislative history recognized the continued proliferation of telemarketing, left unchecked, would undermine that custom. "Unwanted calls are tainting the wanted ones and make us

cringe at the thought of answering the telephone at night. . . .[I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often inundates our mailboxes").

25. The situation has greatly worsened since the TCPA was first passed. In 2018, the House of Representatives received testimony that "approximately 40% of all calls on the landline network are unwanted robocalls," and that "the number of identified scam calls [is expected] to rise . . . to as high as 15% or 16% [.]" *Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. on Digital Commerce and Consumer Protection*, 115th Cong. 1 (testimony of Aaron Foss), available at https://energycommerce.house.gov/ sites/democrats.energycommerce.house.gov/files/documents/Testimony-Garr-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27.pdf; *Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. on Digital Commerce and Consumer Protection*, 115th Cong. 11 (testimony of Scott Hambuchen), available at https://energycommerce.house. gov/sites/democrats.energycommerce.house.gov/files/documents/Testimony-Hambuchen-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27_1.pdf. Others project "scam-calls" will reach "45 percent [of all calls to cellphones] by early 2019." Hamza Shaban, *Nearly half of cellphone calls will be scams by 2019, report says*, Wash. Post (Sept. 19, 2018) available at https://www.washingtonpost.com/technology/2018/09/19/nearly-half-cellphone-calls-will-be-scams-by-report-says/.

**Defendants' Illegal and Deceptive Telemarketing Calls**

26. Defendants use illegal and deceptive telemarketing campaigns to

promote Bolt's gas contracts to California residents and other consumers. Bolt uses telemarketers to solicit business from potential residential consumers in several states, including California, to purchase its products and services through aggressive, outbound telemarketing campaigns.

27. Bolt uses pre-recorded and/or artificial voices to make telephone calls to consumers en masse to promote and market Bolt's core transportation services under Services' license.

28. Bolt also uses misleading or inaccurate caller identification information, including false outgoing telephone numbers ("spoofed" telephone numbers) to entice recipients to answer their telephone calls. Call recipients are less able to avoid unwanted calls from unknown telephone numbers, because they risk missing a wanted call.

29. In California, Bolt's prerecorded calls direct consumers (including Plaintiff and Class Members) to "press 1" to receive a discount of some percentage or a rebate on their PG&E gas bill. The prerecorded call is misleading because it reasonably leaves consumers with the impression that it is PG&E which is offering to reduce their existing gas charges. In fact, the offer to discount or rebate PG&E customers' existing gas charges by some fixed percentage is misleading because none of Bolt's core transportation service plans are tied in any way to a consumer's existing PG&E gas charges (rather, Bolt offers plans priced per day, per therm, or per month). Indeed, Bolt does not know consumers' existing PG&E gas charges (because that information is non-public) and so it could not truthfully offer a fixed discount on PG&E's existing charges.

30. Bolt and/or its agents use pre-recorded and/or artificial voices to make telephone calls to consumers en masse to promote and market Bolt's core transportation services. Recipients of these calls (including Plaintiff) did not give prior consent to receive them. Bolt systemically fails to obtain legally effective consent before placing calls to potential customers, including Plaintiff.

31.     These telemarketing campaigns are conducted for Bolt's benefit and on its behalf. Bolt operates, manages, monitors, and controls these telemarketing campaigns. Bolt records and monitors every call in its telemarketing campaigns. Bolt's marketing coordinators keep a very careful watch over Bolt's telemarketing campaigns. Bolt's supervisors monitor and listen to calls to ensure Bolt's telemarketing campaigns comply with its practices and policies. Bolt's telemarketers have access to Bolt's sales and enrollment systems and have been granted apparent authority as a result.

32.     Bolt Energy has received any number of complaints about its illegal use of robocalls and deceptive telemarketing practices, and has knowingly and actively accepted business that originated through illegal telemarketing calls. See e.g., *Gas suppliers flooding PG&E customers with calls, offers that might cost more*, available at https://www.abc10.com/article/news/investigations/robocalls/pge-customers-gas-suppliers-offers-that-might-cost-more/103-a18f1d90-db0f-4ace-b838-56996ef95e6a (last visited Dec. 31, 2021).

33.     In recent years, Bolt's telemarketing practices have been the subject of numerous consumer complaints and increased regulatory scrutiny. Bolt knew or should have known that its agents were violating the CTA law and the TCPA from the consumer and state regulatory complaints and investigations regarding its telemarketing practices. Bolt knew or should have known that its agents systemically violate the CTA law and the TCPA because of its strict telemarketing rules and policies, including Bolt's ability to perform quality controls.

34.     Nonetheless, Bolt made, and continues to make, these telemarketing calls to individuals nationwide without their consent. Bolt has ratified its agents' conduct by accepting the benefits of the calls, including but not limited to enrolling customers generated by these calls into Bolt's contracts, despite being aware that these calls were unsolicited and made in violation of the CTA law and the TCPA. Bolt has knowingly and actively accepted money that originated through illegal

telemarketing calls.

35. To the extent Bolt used any third-party telemarketers, they were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of Bolt, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Bolt.

36. Bolt operates, manages, monitors, and controls these telemarketing campaigns, and they are conducted for its benefit and on its behalf. Bolt is legally responsible for ensuring it and/or any third party telemarketers complied with the TCPA, even if Bolt Energy did not itself make the calls. Bolt is vicariously liable for its agents' violations of the TCPA. Bolt not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions. Bolt is legally responsible for ensuring it and/or any third party telemarketers complied with the TCPA, even if it did not itself make the calls. In addition or the alternative, Bolt is vicariously liable for its agents' violations of the TCPA.

37. There is no material distinction between telemarketing calls made by Bolt's direct employees and/or by call centers which are technically third parties. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question"

Class Action Complaint 11

precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification"). Bolt is likewise responsible for its telemarketing calls under the CTA law. *See*, *e.g.*, Cal. Civ. Code § 2338.

## Plaintiff's Individual Allegations

38. In 2020, Gamino received unsolicited pre-recorded telemarketing calls by or on behalf of Defendants to her residential, cellular telephone number. Each of Bolt's prerecorded calls contained the same message; they asked Plaintiff to "press 1" to save some fixed percentage on her PG&E gas bill.

39. During one of these calls, occurring on or about March or April 2020, Gamino was connected to a live agent who identified himself as Bolt's representative, and solicited her business for core transportation service.

40. Gamino initially inferred that call was from PG&E because of the prerecorded message. However, after she spoke with the live agent, Gamino understood that the caller was actually from Bolt.

41. Gamino never provided her telephone number to Defendants or their agents for any purpose whatsoever as she never had a business relationship with them. Defendants and their agents did not otherwise obtain Gamino's prior express consent to make calls using a prerecorded voice to her telephone number.

42. Defendants' telemarketing inflicted actual injury on Gamino by invading her privacy. Bolt has caused Gamino the harm inherent in unsolicited, harassing, and deceptive telemarketing calls (including emotional distress, aggravation, nuisance, loss of use of her telephone, wasted time, invasion of privacy, and diverting attention away from her daily activities).

43. Gamino routinely answers calls from unknown numbers because she

might receive a call from an unknown number in the event of a family emergency. She cannot simply ignore Bolt's calls when it calls from new telephone numbers. Gamino's emotional distress is compounded each time she answers a call from an unknown telephone number, contemplating the possibility of a family emergency, only to discover it is one of Bolt's telemarketing calls, which are deceptive and exploitative.

## Class Certification Allegations

44. **Class Definition:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class:

> All persons in the United States who received one or more telemarketing calls to their cellular or residential telephone numbers by or on behalf of Bolt, that were made using an artificial or prerecorded voice, from four years prior to the date of the complaint through the date the Court certifies the class.

Excluded from the Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the Class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the Class definitions based on facts learned during discovery.

45. **Numerosity:** The exact number of Class members is unknown and is not available to Plaintiffs at this time, but such information is readily ascertainable by Defendants and their agents' records. The Class is so numerous that joinder of all members is impractical. Plaintiff alleges that there are at least forty members of the Class.

46. **Commonality:** Plaintiff and Class members share common experiences receiving calls by or on behalf of Bolt. They received multiple, incessant, uninvited calls that included a prerecorded message/artificial voice for

the purposes of marketing Bolt's services to their cellular or residential telephone numbers.

47. **Predominance:** In addition, common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Classes will be sufficient to establish liability to the class member. The predominant common questions include:

    a.    Whether Defendants and/or their agents used an "artificial or prerecorded voice" when placing calls to Plaintiff and Class members, as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

    b.    Whether Defendants are vicariously liable for their agents' calls;

    c.    Whether Defendants and/or their agents had legally effective consent to place telemarketing calls to Plaintiff and Class members;

    d.    Whether Plaintiff and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and Class members are entitled to treble damages;

    e.    Whether Plaintiff and Class members are entitled to injunctive relief and attorney's fees and costs.

48. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff is not different in any relevant way from any other Class members, and the relief she seeks is common to each class.

49. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class: Plaintiff's interests do not conflict with the interests of the other members of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

50. **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other

available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51. **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

52. **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

# FIRST CAUSE OF ACTION
**(Violation of 47 U.S.C. § 227(b)(1)(A)(iii) and/or (b)(1)(B) Against All Defendants By Plaintiff, Individually, and on Behalf of the Class)**

53. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54. Defendants are "persons" as defined by 47 U.S.C. § 153(39).

55. The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service . . .

47 U.S.C. § 27(b)(1)(A). The TCPA also prohibits prerecorded or artificial voice calls to residential telephones:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission . . .

47 U.S.C. § 227(b)(1)(B).

56. The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations:

> A person or entity may . . . bring . . . an action based on a violation of [47 U.S.C. § 227(b)] to enjoin such a violation, an action to recovery for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both . . . If the court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b),] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the [damages available above].

47 U.S.C. § 227(b)(3).

57. Defendants routinely make outgoing calls to cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants

utilized artificial and/or prerecorded voice calls to call the cellular and/or residential telephones of Plaintiff and Class Members. Defendants do not and did not obtain legally effective prior express consent to call the Class members' cellular and/or residential telephone numbers. None of Defendants' calls were for emergency purposes.

58. Defendants' violations are willful because Defendants knew that Plaintiff and Class members had not given prior express consent to receive calls made using artificial and/or prerecorded voices and that Defendants used these methods to call the telephone numbers of Plaintiff and Class members. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

59. Plaintiff Maria Gamino, on her own behalf, and on behalf of the other members of the Class, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3) against Defendants.

60. Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

WHEREFORE, Plaintiff Maria Gamino prays that the Court enter judgment and orders in her favor and against Defendants Bolt Energy Holdings, LLC, Bolt Energy, LLC, Bolt Energy Management, LLC, Bolt Energy Services LLC, and Does 1 to 100 as follows:

    a. An order certifying the Class, directing that this case proceed as a class action, and appointing Gamino and her counsel to represent such classes;

    b. Statutory damages as provided under 47 U.S.C. § 227(b)(3) against Defendants in favor of Plaintiff and the Class, including trebled damages for willful and knowing violations;

    c. Injunctive relief under 47 U.S.C. § 227(b)(3) against Defendants in

favor of Plaintiff and the Class;

d. An award of attorneys' fees under California Code of Civil Procedure § 1021.5 in favor of Plaintiff and the Class; and

e. Such other and further relief as this Court may deem appropriate.

Dated: December 31, 2021     By: s/Grace E. Parasmo
Grace E. Parasmo (308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7119 West Sunset Blvd., No. 808
Los Angeles, California 90046
Telephone: (646) 509-3913

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Maria Gamino, on her own behalf, and behalf of all others similarly situated*

Class Action Complaint                    18

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 31, 2021     By: <u>s/Grace E. Parasmo</u>
                                                    Grace E. Parasmo (308993)
                                                    gparasmo@parasmoliebermanlaw.com
                                                    Yitzchak H. Lieberman (277678)
                                                    ylieberman@parasmoliebermanlaw.com
                                                    PARASMO LIEBERMAN LAW
                                                    7119 West Sunset Blvd., No. 808
                                                    Los Angeles, California 90046
                                                    Telephone: (646) 509-3913

                                                    Ethan Preston (263295)
                                                    ep@eplaw.us
                                                    PRESTON LAW OFFICES
                                                    4054 McKinney Avenue, Suite 310
                                                    Dallas, Texas 75204
                                                    Telephone: (972) 564-8340
                                                    Facsimile: (866) 509-1197

                                                    *Attorneys for Plaintiff Maria Gamino, on her own behalf, and behalf of all others similarly situated*

Jury Demand